# OFFICE OF THE FEDERAL PUBLIC DEFENDER
## DISTRICT OF MARYLAND

NORTHERN DIVISION
TOWER II, NINTH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL: (410) 962-3962
FAX: (410) 962-3976
TOLL FREE: (855) 213-8450

JAMES WYDA  
FEDERAL PUBLIC DEFENDER

GABRIEL REYES  
ASSISTANT FEDERAL PUBLIC DEFENDER

November 10, 2025

Hon. Adam B. Abelson
United States District Court
101 West Lombard Street, Chambers 3D
Baltimore, MD 21201

Re:    *United States v. Jairo Aguilar-Lopez*, 1:25-cr-00058-ABA

Dear Judge Abelson:

I am writing in anticipation of the sentencing hearing set for November 24, 2025. Mr. Aguilar-Lopez has pled to one-count under 8 U.S.C. 1326(a), which charges an illegal reentry following his deportation from the United States. Given the lack of any felony convictions before his departure from the United States, Mr. Aguilar-Lopez faces a statutory maximum of 2 years.  *See* Expedited Presentence Investigation Report, Dkt. No. __, ¶ 61 (hereinafter "PSR").  However, the Guidelines recommendation is in the range of 12 to 18 months.  *Id.* at ¶ 62.  Moreover, data from the United States Sentencing Commission shows that the average Illegal Reentry sentence in the year 2024 for defendants with Mr. Aguilar-Lopez's criminal history score was eight months. Consistent with this average term of imprisonment and for reasons further discussed herein, Mr. Aguilar-Lopez requests a sentence of time served.[1]

As of today, Mr. Aguilar-Lopez has been in continuous custody for twenty months and eight days.  The Baltimore Police Department arrested him on March 2, 2024.  *Id.* at ¶ 27.  Thereafter, on August 16, 2024, the State of Maryland convicted him of attempted arson.  *Id.*  Six days later, the U.S. Immigration and Customs Enforcement ("ICE") lodged a detainer against Mr. Aguilar-Lopez on August 22, 2024.[2]  That detainer indicates that it was aware of his presence in the United States at least on or about that date.  *See United States v. Uribe-Rios*, 558 F.3d 347, 354 (4th Cir. 2009) ("…courts have

---

[1] In this case, US Probation prepared an expedited presentence report.  Mr. Aguilar Lopez has no objection to the calculation of the United States Sentencing Guidelines stated therein.  See Dkt. No. __, para. 62.  He does, however, object and requests an amendment to paragraphs 4 through 11 of that report.  Those paragraphs restate the government's letter submitted in anticipation of Mr. Aguilar Lopez's change of plea hearing.  *See* Dkt. No. 30.  However, the Court relied on Mr. Aguilar Lopez's proposed factual stipulation at the change of plea hearing.  *See* Dkt. No. 26.  He has only stipulated to those facts in connection with this offense.

[2] The government provided the defense a copy of this detainer in discovery, wherein it was marked as USA-000055.

routinely held that an alien is 'found in' the United States only when federal, not state, immigration officials become aware of the alien's presence and illegal status.")

After Mr. Aguilar-Lopez completed his sentence for the attempted arson conviction, federal authorities took possession of Mr. Aguilar-Lopez for the purposes of this proceeding. Mr. Aguilar-Lopez then had his initial appearance on March 28, 2025, seven months after he was first located by federal authorities. *See* ECF Dkt. 4. It is important note, then, that he could possibly now face more time simply on account of that timing in transport.

Undoubtedly, Mr. Aguilar-Lopez's attempted arson conviction arose from severe circumstances. He pled guilty and the State of Maryland imposed a sentence of twenty years suspended for all but 18 months and five years' probation. But the Guidelines account for this conviction in the calculation of his offense level and criminal history score. *See* PSR, ¶¶ 17 and 27.

In similar situations, where defendants appear on Illegal Reentry charges after having sustained state convictions for situations intermixed with their presence in the United States, sister courts in this district often downwardly adjust the sentence recommended by the Guidelines. Mainly, they do so through the issuance of a concurrent sentence (when the person is still serving the state sentence) or a reduction that plainly accounts for time served in state custody. A few illustrative examples include:

- *U.S. v. Juan Jimenez-Alberto* (No. 23-CR-446-SAG) (Judge Gallagher imposing an 18-month sentence, concurrent with the state sentence, for an Illegal Reentry defendant serving a twenty-year drug trafficking sentence suspended for all but five years);

- *U.S. v. Cristian Aguilar-Castellon* (No. 22-cr-374-JRR) (Judge Rubin imposing a 24-month sentence for an Illegal Reentry case, concurrent with a violation of probation on a second-degree rape case).

- *U.S. v. Cruz-Mendoza* (No. 23-CR-131-RDB) (Judge Bennet imposing a 3-month consecutive sentence for an Illegal Reentry defendant serving a 25-year sentence suspended for all but three years for the sexual abuse of a minor).

Aside from the practice of adjusting sentences, courts in this district accept plea agreements showing great leniency to individuals convicted of serious crimes. These examples demonstrate the point:

- *U.S. v. Reymundo-Perez* (No. 22-cr-142-DLB)(Judge Boardman accepting a C-plea to 14 months for illegal reentry client who had previously served 15 years with 8 years suspended for the sexual abuse of a child).[3]

- *U.S. v. Lopez-Vasquez* (No. 1:22-cr-64-RDB)(Judge Bennet accepting a C-plea of 14 to 18 months for client sentenced to twenty-five years for the sexual abuse of a child, suspended for all but five years of active incarceration; final judgment imposed was for 14 months).[4]

---

[3] The parties stipulated to an offense level of 15 in their plea agreement, which implies an 18–24-month sentence absent any criminal history. The defendant had at least three criminal history points based on the plea to the state offense. As such, the floor on the Guidelines recommendation was likely 21-27 months.

In *Reymundo-Perez*, the defendant was convicted for sexual abuse of a minor and sentenced to seven years. *See United States v. Reymundo Perez,* 22-cr-142-DLB, Dkt No. 22 (D. Md. 2022). In *Lopez-Vasquez*, the defendant was arrested on charges of second-degree assault, arrested, and deported from the United States in 2009; he returned and then committed the sexual abuse of a child. *See United States v. Lopez-Vasquez,* 1:22-cr-64-RDB, Dkt. 22-1 (D. Md. 2022).

The posture in which Mr. Aguilar-Lopez comes before the Court most closely mirrors the circumstances of *Cruz-Mendoza* and *Reymundo-Perez*, who had already completed their sentences. Unlike *Lopez-Vasquez*, he was not a convicted felon when he committed the crime of an illegal reentry.

*\*\*\**

While here in the United States, Mr. Aguilar-Lopez lost his way. He came to the United States at the age of 18. *See* PSR, Dkt. __, ¶ 37. Soon, he was dabbling in drugs. *Id.* at ¶ 48. His experiences with these substances have caused permanent damage to his hearing. *Id.* at ¶ 42. They also contributed to his conduct on the night that the state offense took place. He makes no excuses for that conduct and feels terrible remorse.

In Honduras, there is another life that awaits Mr. Aguilar-Lopez. Undersigned counsel recently spoke to his mother, who lamented that children sometimes do not listen. She explained that in Honduras, Mr. Aguilar-Lopez worked and helped her as best he could. Importantly, she noted, he also did not have vices.

She raised Mr. Aguilar-Lopez and his siblings as a single mother. She worked and met expenses. But she could not provide for her children's studies. Mr. Aguilar-Lopez, as a result, went to school only for about three years.

Seeing more opportunity for himself, she explained, he left Honduras around the age of 17. He would leave and then return. But those trips were not good for him. His mother recalls that immigration once found him sick. Immigration called her and they were taking care of him. She relates that Mr. Aguilar-Lopez wanted to be in the United States to help her and come out ahead.

After all that has transpired, she now wants him home. When he returns, his mother vows to work as hard as she can to help. In her words, "thanks to God—nobody is starving." There is work in the fields, and if he desires, Mr. Aguilar-Lopez can work in construction. According to his mom, he'll need to adjust to the reality that "he won't earn too well—but he'll get by."

Because of his state conviction, should Mr. Aguilar-Lopez attempt to return to the United States within the next five years—a period of supervision longer than the Court could even impose via supervised release in the instant federal custody—he faces the possibility of rearrest and a sentence that could stretch for nearly twenty years. That is a disincentive to stay out of his country and not return, greater than any sentence that this Court could impose.

---

[4] For the same reasons stated in the preceding footnote, the floor on the Guidelines recommendation was likely 21-27 months.

## Conclusion

      In recognition that Mr. Aguilar-Lopez has spent a cumulative total of twenty months and eight days in continuous custody and faces a probation violation should he return to the United States within the next five year, he respectfully requests a sentence of time served.

      Respectfully,

/s/Gabriel Reyes
Assistant Federal Public Defender

c.c.
Reema Sood, Assistant United States Attorney
Helen Domico, United States Probation Officer